**JACK COUNTY APPRAISAL DISTRICT, Appellant**

**v.**

**JACK COUNTY HOSPITAL DISTRICT, Appellee**

**NO. 02–14–00188–CV**

Court of Appeals of Texas, Fort Worth.

DELIVERED: January 14, 2016

James R. Evans, Jr., Hargrove & Evans, LLP, Austin, TX, for Appellant.

1. The lease agreement required that the Hospital District notify Provident in writing of its election to purchase the CT scanner at least

Robert ·J. Myers and John J. Shaw, Myers Hill, Fort Worth, TX, for Appellee.

PANEL: GARDNER, WALKER, and GABRIEL, JJ.

## OPINION

ANNE GARDNER, JUSTICE

In two issues, Appellant Jack County Appraisal District (the Appraisal District) appeals from the trial court's order granting Appellee Jack County Hospital District's (the Hospital District) motion for summary judgment and denying the Appraisal District's motion for summary judgment. We affirm.

### Background

The Hospital District is a political subdivision of the State of Texas. In June 2011, the Hospital District entered into a lease agreement with Provident Equipment Leasing, a division of Celtic Leasing Corporation, to lease a CT scanner for use at Faith Community Hospital in Jacksboro, Texas. The lease agreement provided that title to the CT scanner would remain in Provident and that the Hospital District was required to pay all property taxes on the CT scanner. The monthly rental payments were $10,788, and the lease agreement's initial term was for sixty months and could be extended in one-year intervals. The lease agreement also gave the Hospital District the right to purchase the CT scanner from Provident at the expiration of the lease term:

> Lessee may purchase, or renew the Lease for, all but not less than all of the Equipment subject to any Schedule, provided Lessee is not in default and upon proper written notification to Lessor,[1]

six months, but not more than twelve months, before the end of the lease term.

as of the expiration of the Term of said Schedule. In the event Lessee notifies Lessor it elects to purchase the Equipment, the purchase price shall be the "Fair Market Value" of the Equipment. For the purpose of this Lease, "Fair Market Value" is defined as the total cost(s) it would take to replace the Equipment on an in-place, installed basis, including all current cost(s) and expense(s) for the purchase, assembly, installation, delivery, freight, consulting, training, site preparation[,] and any other services that would be required to render such Equipment fully installed, ready, and acceptable for use by an end user as of the termination of the Term. If Lessor and Lessee can[ ]not agree on a purchase price then the purchase price shall be determined by the average of two Senior Appraisers accredited by the American Society of Appraisers, one chosen by Lessor and one chosen by Lessee, both using the definition of Fair Market Value hereunder in determining their purchase price, the cost of which shall be borne by Lessee.

In April 2012, Celtic Leasing rendered the CT scanner to the Appraisal District. See Tex. Tax Code Ann. § 22.01 (West 2015). The Appraisal District appraised the CT scanner at a value of $571,560 and sent notice of the appraised value to Celtic Leasing. See id. § 25.19 (West 2015). Celtic Leasing did not file a protest. The Appraisal District sent two tax bills to Celtic Leasing totaling $19,578.71. Celtic Leasing paid the taxes, and Provident billed the Hospital District for them. The bill from Provident was the first notice the Hospital District had received that the Appraisal District had appraised the CT scanner for taxation. The Hospital District filed a protest with the Jack County Appraisal Review Board, which was denied.

The Hospital District appealed the Jack County Appraisal Review Board's decision to the district court, contending that the CT scanner was public property and therefore tax exempt. See id. § 11.11(a), (h). (West 2015). The Hospital District and the Appraisal District filed cross-motions for summary judgment. See Tex.R. Civ. P. 166a(a)-(c). The Hospital District moved for summary judgment on the grounds that the CT scanner was tax exempt under section 11.11 because it was used for public purposes and because the Hospital District was a political subdivision of the state and the owner of the CT scanner for purposes of application of the exemption. See Tex. Tax Code Ann. § 11.11(a), (h). The Hospital District argued in the alternative that it was the owner of the CT scanner because the lease agreement created a security interest in the CT scanner in favor of Provident, making the Hospital District the owner. The Hospital District further argued that because the 2012 notice of appraised value was not delivered to the Hospital District, it was denied due process, thereby voiding the tax assessment. The Appraisal District moved for summary judgment on the grounds that the CT scanner was not exempt under section 11.11 because there was no signed lease agreement between the Hospital District and Provident, and even if there were a signed lease agreement, the CT scanner would not be tax exempt because the Hospital District was not the owner of the CT scanner under section 11.11.

Without specifying the grounds upon which it relied, the trial court granted the Hospital District's motion, denied the Appraisal District's motion, and ordered the Appraisal District to "perform the 'post-appeal administrative procedures' found at Texas Property Tax Code, Chapter 42, Subchapter C, including, but not limited to, removing the subject property from the

District's Appraisal Rolls for the tax year(s) in question." The Appraisal District appealed.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex.2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex.2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex.2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex.R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex.2010); *see* Tex.R. Civ. P. 166a(b), (c).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex.2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## Discussion

In its first issue, the Appraisal District argues that the trial court erred by granting summary judgment for the Hospital District and by denying summary judgment for the Appraisal District by holding that the CT scanner was owned by the Hospital District, either legally or equitably, for the purpose of property taxation and, therefore, was tax exempt under tax code section 11.11(h) or otherwise not subject to property taxation.

All "tangible personal property" that is located in the taxing unit on the date of valuation "for more than a temporary period" is taxable unless exempt by law. Tex. Tax Code Ann. §§ 11.01, 21.02 (West 2015). Generally, property owned by the state or a political subdivision of the state is exempt from taxation if the property is used for public purposes. *Id.* § 11.11(a). Section 11.11(h) provides:

> For purposes of this section, tangible personal property is owned by this state or a political subdivision of this state if it is subject to a lease-purchase agreement providing that the state or political subdivision, as applicable, is entitled to compel delivery of the legal title to the property to the state or political subdivision, as applicable, at the end of the lease term. The property ceases to be owned by the state or political subdivision, as applicable, if, not later than the 30th day after the date the lease terminates, the state or political subdivision, as applicable, does not exercise its right to acquire legal title to the property.

*Id.* § 11.11(h).

This issue involves statutory construction, which we review de novo. *See CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 231 (Tex.2013). In construing statutes, our primary objective is to give effect to the legislature's intent. *Tex. Lottery Comm'n v. First State Bank of De-Queen*, 325 S.W.3d 628, 635 (Tex.2010) (cit-

ing *Galbraith Eng'y Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex.2009)). We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. *Id.* (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). We presume that the legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind. *Id.* (citing *In re Caballero*, 272 S.W.3d 595, 599 (Tex.2008); *Chastain v. Koonce*, 700 S.W.2d 579, 582 (Tex.1985)). We read statutes as a whole and interpret statutes to give effect to "every sentence, clause, and word of a statute so that no part thereof [will] be rendered superfluous." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex.2003) (quoting *Spence v. Fenchler*, 107 Tex. 443, 180 S.W. 597, 601 (1915)).

 In addition to the general principles that guide our construction of the tax code, statutory tax exemptions are disfavored and are strictly construed against the taxpayer and in favor of the taxing authority. *N. Alamo Water Supply Corp. v. Willacy Cty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex.1991). The burden of proof for showing the exemption applies lies with the claimant. *See id.* An exemption must affirmatively appear in the statute, and all doubts are resolved in favor of the taxing authority. *See Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex.1979).

The Appraisal District does not dispute that the Hospital District is a political subdivision of the state or that the CT scanner is used for public purposes.[2] *See* Tex. Tax Code Ann. § 11.11(a). The Appraisal District contends that the Hospital District did not own the CT scanner within the meaning of section 11.11(h) because the lease agreement was not a lease-purchase agreement giving the Hospital District the present right to compel delivery of legal title to the CT scanner at the end of the lease agreement's term but instead afforded the Hospital District only the opportunity to purchase the CT scanner for an additional, undetermined amount of consideration at the end of the lease without credits for the lease payments made by the Hospital District. Thus, the Appraisal District argues that title does not automatically vest in the Hospital District at the end of the lease term. The lease merely gives the Hospital District the option to enter into a second transaction to negotiate for the purchase of the CT scanner after the lease ends. The Appraisal District asserts that, at best, the Hospital District has a contingent remainder in the CT scanner because the lease agreement does not specify a sales price and because the Hospital District's ability to purchase the CT scanner depends on the availability of public funding and on the decision of its board of directors. The Appraisal District further asserts that the Lease Agreement did not create a security interest in the CT scanner. It contends that, for these reasons, the CT scanner is not exempt under section 11.11(h), and therefore, it should not be removed from the appraisal roll.

Section 11.11(h) does not require that a lease-purchase agreement provide a fixed sales price or credit the lease payments towards the sales price. Nor does it re-

---

2. The Appraisal District has abandoned on appeal its contention that the CT scanner was not exempt under section 11.11 because there was no signed lease agreement between the Hospital District and Provident. The lease agreement attached to the Hospital District's motion as summary-judgment evidence was unsigned, but the Hospital District attached a signed copy of the lease agreement to its summary-judgment response.

quire that the state or political subdivision have the necessary funds or approval to purchase the equipment at the end of the lease. The plain language of section 11.11(h) provides that the state or political subdivision is considered the owner of tangible personal property if the property "is subject to a lease-purchase agreement providing that the state or political subdivision, as applicable, is entitled to compel delivery of the legal title to the property to the state or political subdivision, as applicable, at the end of the lease term." *Id.* § 11.11(h). Under the terms of the lease agreement, if the Hospital District chooses to exercise its right to purchase the CT scanner, it is required to notify Provident in writing at least six months, but not more than twelve months, before the end of the lease term. Upon proper written notice of its election to purchase the CT scanner, the Hospital District has the right to compel delivery of legal title to the CT scanner at the end of the lease term by purchasing it at its fair market value, or if the Hospital District and Provident cannot agree on the fair market value, the average of the values determined by two appraisers.[3]

Citing *Texas Department of Corrections v. Anderson County Appraisal District,* 834 S.W.2d 130 (Tex.App.—Tyler 1992, writ denied), the Appraisal District argues that because the lease agreement does not provide that legal title automatically passes to the Hospital District at the end of the term, section 11.11(h) does not apply. In that case, the court of appeals held that the state was the equitable owner of a prison unit because, according to the terms of a lease agreement between the Texas Department of Corrections and

a private entity to finance the construction of the unit, the state would acquire full legal title to the unit when all the lease payments were made. *Id.* at 131. The court reasoned that if the lease payments were made, the state could compel delivery of legal title, and therefore, the state was the equitable owner of the prison unit. *Id.* Thus, the unit was tax exempt. *Id.*

But interpreting the "entitled to compel delivery of the legal title" language in section 11.11(h) to mean or to require that title automatically pass at the end of the lease term renders the remainder of the section meaningless or mere surplusage: "The property ceases to be owned by the state or political subdivision, as applicable, if, not later than the 30th day after the date the lease terminates, the state or political subdivision, as applicable, does not exercise its right to acquire legal title to the property." *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue,* 271 S.W.3d 238, 256 (Tex.2008) (stating that courts must not interpret a statute in a manner that renders any part of the statute meaningless or superfluous); *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 402 (Tex.2000) (noting that courts give effect to all of a statute's words and, if possible, do not treat any statutory language as mere surplusage); *see also* Tex. Gov't Code Ann. § 311.021(2) (West 2013) (presuming that legislature intended entire statute to be effective). If title passed automatically, there would be no right to exercise by the thirtieth day after the termination of the lease. Moreover, if the legislature intended to require that title pass automatically, it would have used the language used in tax code section 11.11(g), which addresses improvements to

---

**3.** If the Hospital District properly elects to purchase the CT scanner, but a fair market value purchase price has not been determined at least thirty days prior to the expiration of the lease term, the term will continue on a month-to-month basis until such time a fair market purchase price can be determined.

real property leased to the Texas Department of Criminal Justice:

> (g) For purposes of this section, an improvement is owned by the state and is used for public purposes if it is:
>> (1) located on land owned by the Texas Department of Criminal Justice;
>> (2) leased and used by the department; and
>> (3) *subject to a lease-purchase agreement providing that legal title to the improvement passes to the department at the end of the lease period.*

Tex. Tax Code Ann. § 11.11(g) (West 2015) (emphasis added).

The Appraisal District also argues that the legislative history of section 11.11(h) supports its contention that the legislature intended that ownership would transfer to the state or a political subdivision of the state only if title passed at the end of the lease term. Specifically, the Appraisal District points to the following language from a fiscal note accompanying one of the versions of House Bill 846, which eventually became section 11.11(h):

> The bill would amend Section 11.11 of the Tax Code to provide that, for property tax purposes, property is owned by the state or a political subdivision of the state if it is subject to a lease-purchase agreement containing a provision that legal title passes to the state or to a political subdivision at the end of the lease term.

Fiscal Note, Tex. H.B. 846, 75th Leg., R.S. (1997). The original version of House Bill 846 was consistent with the fiscal note: "For purposes of this section, property is owned by this state or a political subdivision of this state if it is subject to a lease-purchase agreement providing that legal title to the property passes to this state or the political subdivision, as applicable, at the end of the lease term." Tex. H.B. 846, 75th Leg., R.S. (1997). This version of the bill, however, was not enacted. *See* Act of May 23, 1997, 75th Leg., R.S., ch. 843, § 1, sec. 11.11, 1997 Tex. Gen. Laws 2715 (codified at Tex. Tax Code § 11.11(h)). Had the legislature intended to require that the lease agreement provide that legal title would automatically pass at the end of the lease term, it would have stated as such. *See* Tex. Gov't. Code Ann. § 311.023(3) (West 2013) (stating that in construing a statute, "whether or not the statute is considered ambiguous on its face," courts may consider legislative history).

The Appraisal District further argues that according to *Texas Turnpike Co. v. Dallas County*, 153 Tex. 474, 271 S.W.2d 400 (1954), the Hospital District has only a contingent remainder. In that case, the two petitioners were chartered as private corporations for the purpose of building, acquiring, owning, and maintaining toll roads within the State of Texas. *Id.* at 401. Conveyances of real property to the state by the petitioners were placed in escrow pending acceptance by the Texas Turnpike Authority upon satisfaction of certain conditions by the petitioners. *Id.* at 401–02. The issue on appeal was whether the property acquired by the petitioners was publicly owned so as to be tax exempt under article XI, section 9 of the Texas constitution. *Id.* at 402. The supreme court held that the state had no control over performance of the conditions, which could be exercised only by the petitioners, and hence had no legal or equitable title but only a "contingent remainder" that was not a vested interest. *Id.* at 402–03. Thus, the property was not owned or held by the state and was not exempt from taxation. *Id.* In contrast, in this case, the Hospital District alone has the right to elect to purchase the equipment at the end of the lease term. Moreover, the issue in this case is whether the CT scanner is tax exempt under tax code section 11.11(a),

which the legislature enacted under the power granted to it by article VIII, section 2 of the Texas constitution, not whether the property is exempt under article XI, section 9. *Compare* Tex. Const. art. VIII, § 2(a) (stating that "the legislature may, by general laws, exempt from taxation public property used for public purposes"), *with* Tex. Const. art. XI, § 9 ("The property of counties, cities[,] and towns, owned and held only for public purposes ... and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation."). Thus, *Texas Turnpike* is not controlling.

■ We conclude and hold that the Hospital District established, as a matter of law, that it was the owner of the CT scanner as defined in section 11.11(h), and therefore, the CT scanner was exempt from taxation under section 11.11(a). Thus, the trial court did not err by granting summary judgment in favor of the Hospital District. Because we have concluded that the trial court properly granted summary judgment on the basis of the tax exemption, we need not address whether the lease agreement created a security interest in the CT scanner in favor of Provident, thereby making the Hospital District the owner. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex.2003); *see also* Tex. R.App. P. 47.1. It is likewise unnecessary for us to address the Appraisal District's second issue in which it argues that the trial court erred by granting summary judgment for the Hospital District and by denying summary judgment for the Appraisal District on the basis that the Hospital District was denied due process because the 2012 notice of appraised value was delivered to Celtic Leasing and not to the Hospital District. *See Knott,* 128 S.W.3d at 216; *see also* Tex.R.App. P. 47.1.

## Conclusion

For these reasons, we affirm the trial court's judgment.

GABRIEL, J., filed a dissenting opinion.

LEE GABRIEL, JUSTICE, dissenting.

I must dissent from the majority's careful and thorough opinion. Based on the plain language of the contract between Provident Leasing and appellee Jack County Hospital District, they did not enter into a lease-purchase agreement, which vitiates the Hospital District's entitlement to the tax exemption.

The majority correctly recognizes that the Hospital District bore the burden of proof to show it was entitled to the tax exemption provided in tax code section 11.11(a) and that we must strictly construe the exemption in favor of appellant Jack County Appraisal District. *See* Tex. Tax Code Ann. § 11.11(a) (West 2015). Similarly, it appears that the majority implicitly concludes section 11.11(a) is unambiguous, and I agree. I further agree that we are to presume that the entirety of section 11.11 is intended to be effective when read as a whole. But because section 11.11(a) is unambiguous, we may not refer to "extrinsic aides such as legislative history" in interpreting it. *City of Round Rock v. Rodriguez,* 399 S.W.3d 130, 137 (Tex.2013); *see Combs v. Roark Amusement & Vending, L.P.,* 422 S.W.3d 632, 635 (Tex.2013); *see also* Ron Beal, *The Art of Statutory Construction: Texas Style,* 64 Baylor L.Rev. 339, 364 & n.157 (2012) (citing cases and stating "[i]f the disputed statute is clear and unambiguous, extrinsic aids and canons of construction are inappropriate, and the statute should be given its common, everyday meaning"). Therefore, we are to look to the plain language of the statute in divining the legislature's intent, which is our primary objective in statutory

interpretation. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.2011); *Fresh Coat, Inc. v. K–2, Inc.*, 318 S.W.3d 893, 901 (Tex.2010). This plain-language approach does allow, however, reference to the common, ordinary meaning of any undefined, statutory term. *See TGS–NOPEC*, 340 S.W.3d at 439; Beal, *supra*, at 366. To the extent the majority relies on legislative history or other extratextual aids to interpret section 11.11(a) as it applies to the Hospital District's claims, I disagree. *See generally* Adele Hedges & Garrett Gibson, *"Taking the Legislature at its Word": The Role of Legislative History in Statutory Construction in Texas*, 71 The Advoc. (Tex.) 13, 14–16 (discussing plain-language rule of statutory construction and noting "[t]he Texas Supreme Court has clearly adopted, at least in concept, the preeminence of the plain[-]language rule whenever possible").

As the majority recites, the tax exemption applies only if the Hospital District and Provident Leasing's contract regarding the CT scanner was "a lease-purchase agreement providing that [the Hospital District] is entitled to compel delivery of the legal title to the property to [the Hospital District] at the end of the lease term." Tex. Tax Code Ann. § 11.11(h). The contract clearly states that it is a finance lease as defined by California law, not a lease-purchase agreement.[1] California, like Texas, has adopted the Uniform Commercial Code (the UCC), which defines a finance lease, as relevant here, as one in which (1) the lessor does not select, manufacture, or supply the goods; (2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and (3) the lessor tells the lessee before the lease is signed the identity of the supplier, the lessee's rights under the lessor's contract with the supplier, and the lessee's right to contact the supplier for a description of any such rights. *See* Cal. Com.Code § 10103(a)(7); *see also Arriaga v. CitiCapital Commercial Corp.*, 167 Cal.App.4th 1527, 85 Cal. Rptr.3d 143, 150–51 (2008) (recognizing California adopted the UCC and discussing definition of finance lease in section 10103); *accord* Tex. Bus. & Com.Code Ann. § 2A.103(a)(7) (West 2009) (defining finance lease as in the UCC). *See generally Lease*, Black's Law Dictionary (10th ed.2014) (defining finance lease by reference to the UCC definition and noting such leases "strongly resemble security agreements"). The contract between Provident Leasing and the Hospital District not only states it is a finance lease but also clearly falls within the statutory definition of a finance lease by its terms.

In contrast, a lease-purchase agreement is commonly defined as "[a] rent-to-own purchase plan under which the buyer takes possession of the goods with the first payment and takes ownership with the final payment." *Lease–Purchase Agreement*, Black's Law Dictionary. This common and ordinary definition of a lease-purchase agreement informs the meaning of the statutory tax exemption as applied to the Hospital District. In a true lease-purchase agreement, the lease payments are applied to the purchase price; therefore, the lessee would have the absolute right to compel transfer of title at the end of the lease term. Here, nothing in the contract allows any lease payments made by the Hospital District to be credited toward any possible, future purchase of the CT scanner. Additionally, the Hospital District

---

1. The contract states it is "a 'Finance Lease' as defined in, and for the purposes only of Division 10 of the California Commercial Code and not necessarily for any accounting purpose or otherwise." Division 10 is entitled "Personal Property Leases" and applies "to any transaction, regardless of form, that creates a lease." Cal. Com. Code § 10102.

had no right to *compel* transfer of the CT scanner's title at the end of the lease period as required for the exemption. The Hospital District could merely enter into negotiations for a purchase price if it determined at its discretion that it wanted to purchase the CT scanner at the end of the lease term: "Lessee *may* purchase, or renew this Lease for [the CT scanner], provided Lessee is not in default and upon proper written notification to Lessor, as of the expiration of the Term.... [T]he purchase price shall be the 'Fair Market Value' of the Equipment." [Emphasis added.] The Hospital District also had the options to extend the lease term or to allow the lease to end and return the CT scanner to Provident Leasing at the end of the lease term. The Hospital District's contractual options to enter into purchase negotiations to pay the agreed fair market value for the CT scanner, to renew the lease, or to terminate the lease and return the CT scanner to Provident Leasing do not equate to a right to compel transfer of title from Provident Leasing at the end of the lease term. Therefore, the contract between the Hospital District and Provident Leasing was a finance lease, not a lease-purchase agreement, and the Hospital District could not claim a tax exemption under section 11.11(a) because its contract did not confer upon it the requisite ownership interest in the CT scanner.

Further, a lease-purchase agreement requiring no additional payment, or only a nominal payment, at the end of the lease term in order for ownership to transfer to the lessee grants the lessee an ownership interest or equity in the equipment; thus, it creates a security interest. Cal. Com. Code § 1203; *accord* Tex. Bus. & Com. Code Ann. § 1.203 (West 2009). By using the term "lease-purchase agreement" and mandating that the political subdivision must have the right to compel transfer of title at the end of the lease term, the legislature clearly showed that it was referring to a lease-purchase agreement creating a security interest, which is identified by the lessee's option to buy the equipment at the end of the lease term "for no additional consideration or for nominal additional consideration." Tex. Bus. & Com. Code Ann. § 1.203(b)(4); *see also id.* § 9.103 (West 2011) (defining "purchase-money security interest"). Fair market value of the equipment at the time of the option is not nominal consideration. *Id.* § 1.203(d)(2). Therefore, the tax exemption applies if the lease-purchase agreement created a security interest, which the lease between the Hospital District and Provident Leasing did not. Indeed, the terms of the finance lease between the Hospital District and Provident Leasing had all the hallmarks of a finance lease and did not create a security interest, which falls outside of the terms of the tax exemption as stated by the legislature. *See id.* § 1.203.

I further disagree with the majority's conclusion that this interpretation of the right to compel title would render the remainder of the tax-exemption statute meaningless. The final sentence of section 11.11(h) states that the property ceases to qualify for tax-exempt status as property owned by the political subdivision under a lease-purchase agreement if the political subdivision does not "exercise its right to acquire legal title to the property." Tex. Tax Code Ann. § 11.11(h). The majority states that if title must pass automatically at the end of the lease term to qualify as a lease-purchase agreement, there would be no right for the Hospital District to exercise to acquire legal title to the CT scanner: "If title passed automatically, there would be no right to exercise by the thirtieth day after the termination of the lease." Even if the right of ownership, or equitable title, automatically passes to a lessee at

the end of a lease term, the lessee would be required to request, or compel, the delivery of legal title under the terms of its lease-purchase agreement with the lessor. *See Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942, 950–51 (Tex.App.—Houston [1st Dist.] 1981, no writ) (defining "equitable title" as an enforceable right to have legal title transferred to holder of equity). Indeed, in that instance, the lessee in a lease-purchase agreement would have the right to compel delivery of legal title as contemplated by section 11.11(h) because the lessee gained equitable title at the end of the lease term by virtue of its compliance with the terms of the lease-purchase agreement. If the lessee does not do so for whatever reason, the property's tax-exempt status would end thirty days after the expiration of the lease term. Thus, these two sentences of section 11.11(h) may be read together without rendering one meaningless. I respectfully believe that the majority's construction of the finance lease between the Hospital District and Provident Leasing as conferring on the Hospital District the right to compel delivery of title at the end of the lease term under section 11.11(h) changes the common meaning of the term "compel" and would have the effect of equating the right to compel to the Hospital District's exercise of its contractual option to attempt to negotiate a fair-market-value purchase price. *Compare Compel*, Black's Law Dictionary (defining compel as "[t]o cause or bring about by force, . . . or overwhelming pressure" or "to convince . . . that there is only one possible resolution"), *with Negotiate*, Black's Law Dictionary (defining negotiate as "[t]o communicate with another party for the purpose of reaching an understanding").

Strictly construing the tax exemption in light of the contract between Provident Leasing and the Hospital District, I conclude that the Hospital District failed to carry its burden to show it was entitled to the exemption because its contract with Provident Leasing by its terms was not a lease-purchase agreement as contemplated by section 11.11(h). Thus, I would hold that the trial court's summary judgment on that basis was improper and would address whether the Hospital District's remaining grounds for summary judgment provided a legal basis upon which to uphold the trial court's summary-judgment order and, if not, whether the Appraisal District established its right to summary judgment. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex.2008); *Comm'rs Ct. of Titus Cty. v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). Because the majority does not, I respectfully dissent.